

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>STEVEN ISTVAN CSIGI,<br><br>Debtor. | Case No. 23-00617<br>Chapter 13<br><br>Related ECF Nos.: 94 |

## ORDER DENYING CONFIRMATION OF CHAPTER 13 PLAN

Debtor Steven Istvan Csigi ("Steven")[1] seeks confirmation of a third amended chapter 13 plan (ECF 94). The standing chapter 13 trustee and Villia Ponce, Trustee of the Filomena D. Felipe Trust Dated January 25, 2014, as amended ("Villia"), have objected (ECF 99, 100). At a hearing on April 1, 2025, I took the matter under advisement.

Steven's case is closely connected to a separate chapter 13 case commenced by Steven's wife, Marylin Csigi ("Marylin"), on March 9, 2021.

---

[1] I use the parties' first names for clarity's sake. No disrespect is intended.

She claimed an exemption in the home that she and Steven own as tenants by the entirety, and no one objected to that claim. The court confirmed Marylin's chapter 13 plan, which (as amended) provides for payments over five years from the petition date.

Villia filed an adversary complaint in Marylin's case (Adv. No. 21-90012).[2] Villia alleged that, while Marylin was the predecessor trustee of the Filomena D. Felipe Trust, she misappropriated the assets of that trust and that her liability to the trust was not dischargeable in bankruptcy. I entered judgment against Marylin and in favor of Villia in the amount of $1,019.477.50 and held that the debt was not dischargeable (ECF 143 in Adv. No. 21-90012). The Bankruptcy Appellate Panel affirmed the judgment. Marylin's further appeal to the Ninth Circuit is in the early stages of briefing.

When Villia began to enforce the judgment against Steven and Marylin's home, Steven filed his own chapter 13 case on August 8, 2023.

---

[2] This adversary proceeding succeeded state court litigation that was stayed after Marilyn filed for bankruptcy.

2

Like Marylin, Steven claimed a tenancy by the entirety exemption in the home. Villia objected to the claim of exemption, arguing that Steven and Marylin were jointly liable to the trust and that the tenancy by the entirety does not protect the property against joint debts of both spouses. I conditionally sustained the objection, holding that, if Steven and Marylin were jointly liable to the trust, the tenancy by the entirety would not protect the home from that liability (ECF 40).

Villia filed an adversary complaint in this case, alleging (in summary) that Steven was liable to the trust along with Marylin because he had participated in or benefitted from Marylin's misappropriation of money from the trust, and that his liability was not dischargeable in bankruptcy. I entered judgment against Steven and in favor of Villia in the amount of $563,935.91 (the portion of the money that Marylin misappropriated and from which Steven benefitted) and held that the debt was not dischargeable (ECF 37 in Adv. No. 23-90019). Steven's appeal to the Bankruptcy Appellate Panel is in the early stages of briefing.

In the meantime, Steven attempted to confirm a chapter 13 plan. The court denied confirmation of his original and first amended plan (ECF 53, 65). Before the court ruled on confirmation of the second amended plan (ECF 77), he filed the third amended plan that is before me now (ECF 94).

**"Liquidation" Test**

Villia and the chapter 13 trustee argue that the plan fails the "liquidation test" of § 1325(a)(4). The liquidation test requires the debtor to prove that each unsecured creditor will receive at least as much under the plan as the creditor would receive in a chapter 7 liquidation.

Steven argues that his unsecured creditors would get nothing in a chapter 7 case because Marylin claimed that the property was subject to the tenancy by the entirety objection in her case and no one objected to that claim. As a result, Steven argues that the tenancy by the entirety completely protects the property in this case. I disagree.

Section 522(a)(3)(B) provides that, if the debtor elects to claim the so-called "federal exemptions," the debtor may also claim an exemption in "any interest in property in which the debtor had, immediately before the

commencement of the case, an interest as a tenant by the entirety . . . to the extent that such interest as a tenant by the entirety . . . is exempt from process under applicable nonbankruptcy law . . . ." Hawaii law applies because the home is located in Hawaii. Under Hawaii law, an "estate by the entirety is not subject to the claims of the creditors of one of the spouses during their joint lives . . . ." *Sawada v. Endo*, 57 Haw. 608, 616 (1977). Conversely, entirety property is subject to joint claims against both spouses. *In re DeStefano*, 2025 WL 719776 (Bankr. D. Haw. March 3, 2025).

Because § 522(b)(3)(B) permits a debtor to exempt entirety property only "to the extent that such interest as a tenant by the entirety is exempt from process under applicable nonbankruptcy law," and because Hawaii law does not protect entirety property from joint debts of both spouses, Marylin's claim of exemption does not protect the home from the claims of creditors to whom she and Steven were jointly indebted.

Steven argues that Villia is barred by estoppel and res judicata from denying that the home is exempt from Villia's claims. I disagree.

5

Steven does not elaborate on his estoppel argument. The paradigmatic estoppel argument arises when a party A takes an action or asserts a position on which party B relies to party B's detriment and party A later attempts to take an inconsistent position. *See Clemmons v. Hawaii Med. Servs. Ass'n*, 836 F. Supp. 2d 1126, 1144 (D. Haw. 2011). The action or position which Steven thinks gives rise to an estoppel in this case is Villia's failure to object to Marylin's exemption claim in her case. But Villia's failure to object is perfectly consistent with her contention that Steven and Marylin's home is subject to her claims. Marylin claimed the entirety exemption, which entitled her to protect the home from the claims of her individual creditors. The entirety exemption does not protect the home from the couple's joint creditors. Villia did not have to object to the entirety exemption in order to preserve her right to collect joint debts from the entirety property. Villia has not asserted inconsistent positions regarding the entirety exemption to Marilyn or Steven's detriment, so the estoppel argument fails.

6

Preclusion doctrines (formerly known as res judicata and collateral estoppel) also do not help Marylin or Steven, because the court never decided in Marylin's case whether Steven was liable jointly on any of Marylin's debts.

Steven also argues that § 522(c) protects the property from Villia's joint claims. That section provides that "property exempted under this section is not liable for any debt of the debtor that arose . . . before the commencement of the case . . . ." I disagree. The home is exempt, but that exemption only extends to Marilyn and Steven's individual creditors, not their joint creditors. If Steven's interpretation were correct, entirety property would be protected against all debts, including joint debts, even though applicable nonbankruptcy law does not have that effect, and even though § 522(b)(3)(B) carefully links its protection to applicable nonbankruptcy law.

Steven's plan provides that, if the court rejects his contention that unsecured creditors would receive nothing in a chapter 7 case, the court should confirm a plan based on a liquidation analysis producing

7

$263,579.00 for unsecured creditors, while preserving his right to appeal from the court's rejection of his preferred liquidation analysis. If the court adopts the higher liquidation analysis, "[a] lump sum payment of $290,000.00 shall be due within 90 days of completing all the appeals in this case." (ECF 94 at 7.)

The chapter 13 trustee and Villia argue that Steven's liquidation analysis is wrong. The following table compares their computations:[3]

|  | Ch. 13 Trustee | Second amended plan (ECF 72) | Third amended plan (ECF 94) |
|---|---|---|---|
| Value of home | $1,380,700.00 | $1,380,700.00 | $1,380,700.00 |
| Realtor commission | ($82,842.00) | ($82,842.00) | ($82,842.00) |
| Estimated closing costs | ($25,000.00) |  | ($50,000.00) |
| Mortgage | ($479,104.50) | ($470,000.00) | ($470,000.00) |
| Capital gains taxes (state & federal) | ($75,840.91) | ($100,000.00) | ($100,000.00) |
| Estimated Ch. 7 professional fees | ($50,000.00) | ($10,000.00) | ($100,000.00) |
| Estimated Ch. 7 Expenses | ($64,671.00) | ($52,838.55) | ($50,000.00) |
| Total Deductions | ($777,458.41) | ($715,680.55) | ($852,842.00) |
| Net sale proceeds | $603,241.59 | $665,019.45 | $527,858.00 |
| Marilyn's Interest |  | $332,509.73 | $263,929.00 |
| Exemptions |  | ($30,000.00) |  |
| Total for Unsecured Creditors | $603,241.59 | $302,509.73 | $263,929.00 |

---

[3] Steven presents two liquidation analyses. Both are reproduced here to completely illustrate the issues with Steven's proposed plan.

8

I find that the chapter 13 trustee's calculation is more reliable than Steven's. (1) The chapter 13 trustee provides a plausible estimate of the capital gains tax. In contrast, Steven provides no backup for his estimate and ignores the improvements made to the home that would increase its basis. (2) Steven's estimate of the professional fees that a chapter 7 trustee would incur is excessive. The chapter 7 trustee's primary job would be to sell the property. That task would not require significant attorneys' fees. Because the chapter 7 trustee's charge is to liquidate property for the benefit of the creditors, it seems unlikely that the chapter 7 trustee would engage in extensive appellate litigation. (Even the chapter 13 trustee's estimate of those fees is generous.) (3) The trustee's estimate of closing costs is more reasonable than Steven's. (4) Steven's calculations are based on his argument that Marylin's claim of exemption in her case protects at least her share of the property from joint claims in this case. As I have explained, I disagree with this assertion. The trustee's calculations correctly show the amount that is available to joint creditors of Steven and Marylin in this case.

Therefore, I find[4] that, in a chapter 7 liquidation, unsecured joint creditors of Steven and Marylin would receive at least $603,241.59. Because this is greater than the value of the distributions under the proposed plan, the plan fails the liquidation test.

### **Likelihood of Plan Completion**

In order to obtain confirmation of his plan, Steven must prove that he "will be able to make all payments under the plan and to comply with the plan." § 1325(a)(6). Villia argues that Steven's income is not sufficiently reliable and stable to satisfy this requirement. I disagree. Steven has apparently made his plan payments since he commenced this case about twenty months ago. It is also relevant that Marylin has apparently maintained her plan payments for about four years; since Steven and Marylin share a household, this suggests that they are able to meet their regular expenses and comply with their plans.

---

[4] None of the parties has presented any evidence to support their calculations. But no one has requested an evidentiary hearing or argued that I should not consider any other party's factual assertions. Therefore, I will treat those assertions as offers of proof.

But there is another, more serious, problem with the plan payments. Steven's plan provides that, if he fails on appeal to establish that the liquidation test would justify a zero distribution, he will make a lump sum payment of $290,000 "within 90 days of completing all the appeals in this case."[5] The maximum term of a chapter 13 plan is five years (sixty months) from the petition date. § 1322(d). Twenty months have already expired. There is no certainty that all of Steven's appeals, including a further appeal to the Ninth Circuit, will be concluded in forty months. The plan does not address the possibility that the lump sum payment will become due after the maximum term of a chapter 13 plan.

**Good Faith**

The lump sum payment also calls into question Steven's good faith in proposing the plan. Because the lump sum payment may not become due until after the maximum term of a chapter 13 plan, the plan appears to be a stalling tactic. Further, this provision gives Steven an incentive to delay the appeals. If the appeals are not concluded in the next forty months, Steven

---

[5] Steven presumably intends to include his appeal, not only from this order, but also the judgment in the separate adversary proceeding in this statement.

could argue that the maximum term of a chapter 13 plan excuses him from the obligation to make the lump sum payment.

Finally, the provision also arguably gives Steven an escape hatch. If he exhausts his appeals without success, he could exercise his absolute and unwaiveable right to dismiss the case "at any time." *See* § 1307(b). The right to dismiss his case means that his promise of the lump sum payment is illusory. *See In re Thornhill*, 268 B.R. 570, 574 (Bankr. E.D. Cal. 2001) (holding that a shortfall in plan funding "cannot be cured with 'annual reviews' and illusory promises to 'pay more' in the future.").

Under the totality of the circumstances, I hold that Steven has not carried his burden of proving that he proposed this plan in good faith. *See In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir. 1999).[6] Steven has filed a series of unconfirmable (and partly illusory) plans in an effort to manipulate the Bankruptcy Code and avoid paying his nondischargeable debt to Villia.

For these reasons, confirmation is DENIED.

**END OF ORDER**

---

[6] *Leavitt* addressed a motion to dismiss a chapter 13 case for bad faith, but the same analysis applies to plan confirmation. *In re Welsh*, 711 F.3d 1120, 1132 (9th Cir. 2013).